MATTER OF DeG—— ET AL.

In EXCLUSION Proceedings

A-10644351
A-10847616
A-11404466
A-11067105

*Decided by Board May 14, 1959*
*Commissioner's Motion June 15, 1959*
*Board Decision August 24, 1959*
*Decided by the Attorney General December 14, 1959*

Waiver of excludability—Advance exercise of sections 5 and 7, Act of September 11, 1957, not authorized in exclusion proceedings where present excludability is established.

Advance waivers of inadmissibility under sections 5 and 7 of Act of September 11, 1957 are not authorized to facilitate future admission of aliens ordered excluded. Disposition of waiver requests must await return to foreign territory and compliance with procedure established by 8 CFR 212.7(a).

EXCLUDABLE:

(DeG——)—Act of 1952—Section 212(a)12) [8 U.S.C. 1182(a)(12)]—Engaged in prostitution.

(DeV——)—Act of 1952—Section 212(a)(12) [8 U.S.C. 1182(a)(12)]—Engaged in prostitution.

Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)]—Visa by fraud or willful misrepresentation.

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—No valid visa.

(DeR——)—Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)]—Procuring documentation by fraud or willful misrepresentation.

(R——) —Act of 1952—Section 212(a)(9) [8 U.S.C. 1182(a)(9)]—Convicted of a crime involving moral turpitude.

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—No valid visa.

**BEFORE THE BOARD**
(May 14, 1959)

**Discussion:** This is a motion by the Assistant Commissioner, Inspections, requesting that the Board reconsider and withdraw that portion of the order entered in each case which granted the particular applicant certain discretionary relief under Public Law

325

85–316 (Act of September 11, 1957). In each case the applicants are physically in the United States and must leave to obtain visas so that they may rejoin their families in the United States. The discretionary relief was granted to expedite the issuance of visas and the consequent return to the United States. The issue is whether the Board had power to grant the discretionary relief. Sections 5 and 7 of Public Law 85–316 authorize the waiver of certain grounds which prevent the issuance of visas and which bar entry into the United States. The motion will be denied.

Each of the applicants is excludable for the relating reasons stated in the caption. The facts in the individual cases have been fully set forth in previous orders. The situations are not too dissimilar. To simplify matters, we shall briefly relate the facts of only the first case (DeG——). DeG——, a 27-year-old female, is a native and citizen of Mexico. She is married to a citizen of the United States, and there is a United States citizen child of the union. The applicant was a prostitute in Mexico for periods of various duration from 1951 to 1953. On March 9, 1956, she received a nonquota visa. She was ineligible for the issuance of this visa because she had engaged in prostitution (section 212(a)(12), Immigration and Nationality Act; 8 U.S.C. 1182(a)(12)). Her unfortunate employment was known neither to the consul when he issued the visa nor to the Service when she was admitted for permanent residence on March 9, 1956. After her admission, the applicant made her home in the United States. She left for a short visit to Mexico. She is now reapplying for admission. She was found excludable because she had engaged in prostitution. She applied for discretionary relief under Public Law 85–316. The special inquiry officer considered the following matters: Applicant had been a resident of the United States for several years; her husband and child are citizens of the United States; her husband, an honorably discharged veteran, had served in the army four years; the family is buying a home; extreme hardship would result if the applicant were excluded; and a check of appropriate government records failed to reveal any derogatory information. The special inquiry officer found that the applicant's admission would not be contrary to the national welfare, safety or security of the United States. He ordered her admission as a returning resident under section 5 of Public Law 85–316, waiving the inadmissibility arising out of the fact that she had been a prostitute. The special inquiry officer certified the case to this Board for consideration. The Board found that the visa issued in 1956 could not be validated because it had been issued prior to September 11, 1957, when Public Law 85–316 had been enacted; that applicant had never been lawfully admitted for permanent residence and that she needed a valid visa to enter.

The Board used Public Law 85–316 to grant the applicant an advance waiver of the ground of inadmissibility so that when she applied again for a visa, expeditious action could be taken upon her application for the visa.

The Service position, while not stated so bluntly, is that the Board has no authority to grant advance waivers of grounds of inadmissibility under sections 5 and 7 of Public Law 85–316 (8 U.S.C. 1182b, 1251a, 1959 Pocket Part), for to do so is contrary to regulations (8 CFR 212.7) and the intent of the statute.

The contention that the Board is without authority in exclusion proceedings to grant relief under Public Law 85–316 is new. It was not advanced when these cases were previously before us.

The Attorney General has conferred his authority under the immigration laws upon this Board to be used "as is appropriate and necessary for the disposition of the case" before the Board, except when there is a "specific limitation" on the Board's power (8 CFR 3.1(d)(1)). There is no specific limitation preventing the Board from exercising relief under sections 5 and 7 in an exclusion proceeding. It has always been considered appropriate and necessary in the disposition of a case to give all relief possible to expedite the return of an alien in a proper case (see orders in *Matter of G——Y——G——*, 4 I. & N. Dec. 211 (exclusion proceedings); *Matter of R——*, 3 I. & N. Dec. 343 (application for advance exercise of relief); *Matter of H——*, 3 I. & N. Dec. 784 (preexamination proceedings); Matter of A——, 2 I. & N. Dec. 459 (deportation proceedings)). The instant cases were properly before the Board on appeal. We believe that the Board had authority to act (*Matter of B——*, 7 I. & N. Dec. 1; *Matter of S——N——*, 6 I. & N. Dec. 73; *Matter of N——*, 6 I. & N. Dec. 321; *Matter of M——*, 5 I. & N. Dec. 598).

The Commissioner's issuance of regulations concerning Public Law 85–316 (8 CFR 212.7) should not confuse the issue. The Attorney General has delegated authority under immigration laws to the Commissioner and has authorized the Commissioner to issue regulations to carry out his responsibilities. However, the delegation of authority states that the Commissioner has no authority to divest the Attorney General or the Board of its power, privileges, and duties (8 CFR 2.1). Under his authority, the Commissioner has issued 8 CFR 212.7 providing that persons living abroad should submit applications for relief under sections 5 and 7 to the consul who is to forward the applications to the Service for decision. Bearing in mind the extent of the grant of power to the Board and the restrictions upon the Commissioner's power, it is clear that the regulation issued by the Commissioner should no more be read to divest the Board of authority than it should be read to divest the Attorney General of authority. The regulation should be read in

its natural meaning as governing relations between applicants for relief and the Service. Otherwise, it is being construed as giving only the Service the right to give relief under sections 5 and 7.

Since in exclusion proceedings the Board has the power to grant or deny relief applied for under sections 5 and 7, and no specific reason for denying the applications of any of the individuals involved herein has been advanced, no change need be made in any of the orders.

The remainder of the Service contentions have nothing to do with the power of the Board to act but are general statements as to the desirability of the Board taking the action it did. We shall comment briefly upon these contentions. The Service believes that in granting relief in exclusion proceedings, the Board may overlook grounds of inadmissibility which the consul may find to exist. Of course, this possibility exists, *as it does when the Service grants advance relief under sections 5 and 7 in preexamination proceedings in the United States.* However, it is not an important consideration. Exclusion proceedings (preexamination is considered of this nature) are held before skilled employees who are interested in determining whether or not an alien is inadmissible. If some ground of inadmissibility escapes them which is discovered by the consul, the waiver may be enlarged by the Service or the Board to include the ground of inadmissibility discovered, if the ground is one covered by law and it is desirable to do so. If the ground of inadmissibility disclosed cannot be waived, then, of course, the consul will not issue a visa. One thing is clear. A grant of advance relief by the Board or by the Service does not compel the consul to issue a visa. That is a matter solely within his discretion. (A ground of inadmissibility may not be discovered until after the applicant has received his visa and appears before the Service; then, or in a case where no visa is required, the Service or the Board may grant *nunc pro tunc* relief under sections 5 and 7 (*Matter of P——,* 7 I. & N. Dec. 713)).

The Service is concerned with the thought that the Board may make decisions without information which may be in the possession of the consul. (All four of the applicants concerned here were issued visas by an American consul. Since they were given favorable consideration, it would appear extremely unlikely that he will be in possession of any derogatory information which would be of value in considering the advisability of granting waivers.) What is done by the Board in granting an advance waiver in an exclusion proceeding does not differ from the action of the Service itself in granting the same relief in preexamination proceedings. In each of the instant cases the usual Service neighborhood investigation and check of appropriate records have been made. The basis for the Service conclusion that the consul will do more than forward the

application to the Service, which the regulations require him to do, is not set forth.

Extensive administrative experience using similar relief makes it clear that the Board's action is efficient, effective, and will not result in harm to the nation, or in the admission of undesirable aliens. An application granted in exclusion proceedings, just as one granted in preexamination proceedings by the Service, should reduce considerably the time involved in obtaining the issuance of a visa. Moreover, the individuals who are benefited by Board action in most cases would be persons who had considerable periods of residence in the United States and are under an order requiring their separation from their homes and families. The fear of permanent separation would be strong. It will undoubtedly do much to relieve this fear, if, in deserving cases, favorable action is promptly taken. The intent of the law is to reunite deserving families. The action of the Board speeds this end.

In summary, the practical reasons advanced by the Assistant Commissioner are no more potent here than if they were advanced in a preexamination proceeding. Basically, the Board has power to act; the action taken was in the exercise of sound discretion.

**Order:** It is ordered that the motion be and the same is hereby denied.

### BEFORE THE CENTRAL OFFICE
(June 15, 1959)

Discussion: In each of the instant exclusion proceedings, the Board has affirmed excludability but has granted an advance waiver of sections 5 and 7 of the Act of September 11, 1957, if the alien applies for admission in possession of a valid visa issued within 6 months.

Involved is an interpretation of 8 CFR 212.7(a) which states, in pertinent part: "An alien who is excludable and seeks a waiver under section 5 or 7 of the Act of September 11, 1957, *shall file an application on Form I-601 at the consular office considering the application for a visa for transmittal to the Service for decision.* The applicant shall be notified of the decision and if the application is denied of the reasons therefor and of his right to appeal in accordance with the provisions of Part 103 of this chapter." (Emphasis supplied.)

In its order denying the Service motion to reconsider, the Board has taken the position that its authority to take any action necessary for disposition of a case before it,[1] overrides the specific language

---

[1] 8 CFR 3.1 *Board of Immigration Appeals— * * * (d) Powers of the Board—(1) Generally. Subject to any specific limitation prescribed by this chapter,* in considering and determining cases before it as provided in this part the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case * * *. (Emphasis supplied.)

of the regulation; that the regulation can only govern relations between the applicants and the Service, and has no applicability to the Board. The Service, on the other hand, asserts that the Board action is in no way necessary to disposition of the cases before it, since in any event, as the Board has recognized, the aliens must proceed to the United States consul for visas. The Service takes the view that an orderly process has been evolved with concurrence of the Department of State whereby an application for section 5 or section 7 relief is first received at the consulate and, if necessary, is forwarded to the Service for action on the basis of all available information; that the ruling of the Board not only is unnecessary to disposition of the case, and contrary to the regulation, but, for reasons set forth in the Service motion to reconsider, may actually inconvenience the alien, the Service, and the Department of State.

It will be noted that these aliens are all natives and citizens of Mexico. Their position in this respect is similar to that of the subject in *Matter of DeF*——, A–10547426, Int. Dec. No. 978 (Atty. Gen., Feb. 26, 1959). In that case the Board, in its original order, attempted to advance precisely the argument advanced here respecting separation of families and expediting the issuance of visas. The arguments have no more merit here than they did in that case, since, as in *Matter of DeF*——, *supra*, these aliens must apply to a United States consul for visas.

The Board has also attempted to draw an analogy to the procedure followed by the Service in preexamination proceedings. Under 8 CFR 235a, the Service makes a finding only as to *prima facie* eligibility for section 5 or section 7 relief in connection with granting an application for the privilege of preexamination. This enables the United States consul in Canada to entertain the initial application for a visa. If eligible in all other respects, the alien is required to file with the consul the application called for by 8 CFR 212.7. This application is forwarded to the Service and considered and passed upon at such time as the alien is actually preexamined.

The procedure followed by the Service in preexamination is in all respects consistent with the position urged in the instant case— namely, that it is improper for either the Service or the Board to make an unnecessary advance adjudication in connection with a matter which must initially be passed upon by another governmental agency.

For the reasons set forth in the Service motion of February 25, 1959, it is submitted that the decision is in error.

*Request is hereby made* that pursuant to the provisions of 8 CFR 3.1(h)(1)(iii), the instant cases be referred to the Attorney General for review.

**Discussion:** In each of the cases in question, the Board has granted under sections 5 and 7 of Public Law 85–316 discretionary relief of a nature it has as a practice of long standing granted under similar circumstances.[1] The Service is of the opinion that the Board is shorn of its usual power because of the regulation found at 8 CFR 212.7. This regulation of the Service concerns the manner of transmitting applications for relief under section 5 or 7 by one whose application for a visa is being considered at a consular office.[2] We rejected the Service construction of its regulation feeling that it would invade the province of the Attorney General who alone has administrative power to restrict and change functions of the Board. The Board acts for the Attorney General. The decisions of this Board are binding precedents upon the Service. The Service cannot by regulation take away or change the functions of this Board, or nullify its precedents. Otherwise, independent administrative review of actions vitally affecting aliens who are closely related to United States citizens or lawfully resident aliens could be jeopardized or seriously curtailed.

Cases arising under the immigration laws present unusual and varied factual situations. The greatest degree of administrative flexibility is required to deal with such situations equitably and fairly. It is the freedom permitted to this Board that has enabled the Board to do its job of independent administrative review in a "fair and equitable" manner.[3] It would seriously hamper the ability

---

[1] So normal is the exercise of such power and so well established is the practice that the special inquiry officer who considered the issue of advance relief granted it without even discussing the right to exercise relief. (Two special inquiry officers terminated proceedings after improperly granting waivers. One officer denied relief on the ground that the applicant was not eligible since her visa had not been issued after September 11, 1957. He did not consider the availability of advance relief.)

[2] The aliens in the instant cases do not have applications for visas pending. They were issued visas before September 11, 1957. They applied for relief under Public Law 85–316 in the exclusion proceedings on the proper form.

[3] Comment of Committee on the Judiciary, H.R. No. 1365, 82d Cong., 2d Sess., pp. 35–6, February 14, 1952; U.S. Code Congressional and Administrative News, 1952, pp. 1687–8:

*Board of Immigration Appeals.*—In the course of activities conducted in pursuance of section 136 of the Legislative Reorganization Act of 1946 (60 Stat. 832), the committee gained good knowledge of the practices, procedures, and decisions of the Board of Immigration Appeals established in the Department of Justice. It is believed that the Board has well served its purpose and has greatly contributed to a fair and equitable administration of justice in immigration, nationality, and naturalization cases. Refraining at this time from proposing to change the status of the Board into a statutory body, the committee is of the opinion that the Attorney General should not alter in any way the structure and functions of the Board.

of the Board to minimize hardship if its hands were tied by rigid concepts.[4]

Several collateral matters raised by the motion require comment. The motion appears to indicate that by the regulation there has been a redelegation to the Department of State of the power and responsibility to pass upon an application for a waiver under section 5 or 7 of Public Law 85–316 (see, penultimate paragraph of discussion of the Service request for certification). A review of the administrative practice of the Department of State reveals that it does not contemplate the making of recommendations or joint action with the Attorney General. Therefore, contrary to the implications of the motion the Department of State does not pass upon the request. It assists the alien who is an applicant for a visa to fill out the form asking the Service to grant a waiver, and then without making a recommendation, forwards the form to the Service. (See letter from Department of State, Appendix "B.")

It may be desirable to have applications from those abroad filed through the Department of State. However, such action is not required by law, and it is not essential.[5] At present *it is routine to grant relief under the very law in question without any request being filed with the Department of State*. Aliens who entered with visas issued after Public Law 85–316 became effective need not file applications for relief under sections 5 and 7 with the consul. They apply directly to the Service in exclusion proceedings. Aliens who apply for adjustment of status under section 245 of the Immigration and Nationality Act apply directly to the Service. Aliens who apply for creation of record of lawful entry under section 249 of the Immigration and Nationality Act apply directly to the Service. Aliens in preexamination proceedings file directly with the Service.[6] Many applications for similar relief have been granted under the 7th proviso to section 3 of the Immigration Act of 1917 and under section 212(c) of the Immigration and Nationality Act on the basis of requests made directly to the Service.

In our opinion the motion in at least two aspects furnishes inaccurate information as to the procedure used in applying for section 5 or 7 relief. As we have indicated, the motion indicates that the

---

[4] We have previously rejected a Service contention that its regulation as to a procedural matter can abate the authority of the Board sitting in independent review of Service action in cases properly before it (unreported *Matter of R——H——*, A–4218988, Dec. 1, 1955, Appendix "A").

[5] Service investigations were made in each case involved here. Information of any importance which is available to the Department of State would have been available to the Service in its investigation.

[6] Preexamination, abolished as of June 30, 1959, was a device which enabled an alien in the United States to enter Canada to apply for a United States immigrant visa.

Department of State passes upon an application. In fact, the Department merely transmits the application without recommendation. We believe the motion is also inaccurate in regard to what occurred in a preexamination proceeding. The motion explains that in preexamination proceedings an alien in the United States who desires to apply for relief under sections 5 and 7 is required to file an application with the consul abroad and that the consul in turn sends the application to the Service for consideration. An examination of the pertinent regulations (8 CFR 235a) fails to reveal a reference to such a round-about procedure. The Department of State does not know of such a practice (Appendix "B"). Based upon review of the cases which have been brought before us, it is quite clear to us that an applicant for preexamination who applied for the benefits of section 5 or 7 applied to the Service and to the Service only, and that the Service approved or denied the application without any intervention by the Department of State.

*Matter of DeF*——, A–10547426, Int. Dec. No. 978, decided by the Attorney General on February 26, 1959, is quoted in the motion in support of the Service view that its regulation as to procedure prevents the Board from acting as it normally could. We understand *Matter of DeF*——, *supra*, to be a statement by the Attorney General that section 5 or 7 is available to an alien making application for admission to the United States and that it is not available to an alien in the United States unless he is eligible for preexamination—a procedure contemplating the departure from and reentry of an alien into the United States. Since the aliens here are applicants for admission to the United States, obviously they are eligible in this proceeding to apply for the relief.

Perhaps we are not clear as to the manner in which the Service interprets *Matter of DeF*——, *supra*, since after it was decided the Service followed policies which in our opinion are contrary to the Attorney General's ruling. The Attorney General, relying upon several court cases, held that an application for relief under section 5 or the pertinent part of section 7 could be made only in exclusion proceedings. Nevertheless, after this finding was handed down the Service issued or continued in effect regulations permitting an alien in the United States to apply for relief although *exclusion proceedings are not involved and the alien will never leave the United States to apply for a visa and will never apply for admission. The alien need not even be eligible for preexamination.* (8 CFR 245; 8 CFR 249.1, 24 F. R. 4906, June 17, 1959).

The Service action appears contrary to *Matter of DeF*——, *supra*, in another regard. *Matter of DeF*——, *supra*, states that it is the intent of Congress that sections 5 and 7 were to be applied prospectively only, *i.e.*, to situations which arise after September 11, 1957.

333

This is so because it was found that Congress contemplated the making of an application for a visa and that the application was to be made after the date of Public Law 85-316. The Service, however, by its regulations makes possible the grant of relief to an alien in the United States who entered long before September 11, 1957, and who may even have entered without a visa (*Matter of M——*, A-10256535, Int. Dec. No. 990). If the Service is correct in its actions, then *Matter of DeF——, supra,* unfairly prevents the same relief being given to the instant aliens. If the Service is correct in its actions, proceedings should be terminated in each of these cases, for the sole barrier to the eligibility for relief in the instant cases is holding in *Matter of DeF——, supra,* that the law contemplates the making of an application for a visa after September 11, 1957. Were it not for this interpretation, each of these aliens who already has obtained a visa could be granted a waiver under section 5 or 7 and admitted for permanent residence.

Our discussion of the collateral matter should not obscure the fundamental issue. The Board acting in accordance with well-established precedents has exercised the Attorney General's power in matters properly before it. The Service is without authority to deprive the Board of this power either directly or indirectly.

**Order:** In accordance with provisions of 8 CFR 3.1(h)(1)(iii), these cases are refrred to the Attorney General for review.

**Order:** The orders excluding the aliens in the above-described cases are approved, but that portion in each of the Board's orders which directs admission of the aliens pursuant to an exercise of the discretion contained in sections 5 and 7 of the Act of September 11, 1957, is hereby disapproved. Exclusion of the aliens is without prejudice to a further application for an exercise of discretion, in accordance with the terms of 8 CFR 212.7(a), provided an application for admission is made with a valid visa issued within 6 months from the date of this order or the date of any extensions authorized by the appropriate district director.

———

The aliens in these cases have all obtained visas to enter the United States, but charges subsequently developed have been sustained against them. As a result they are now subject to exclusion. On the basis of the record presented, the Board has ordered the aliens excluded but has considered the cases appropriate for an advance waiver of the grounds of exclusion through an exercise of the discretion authorized by sections 5 and 7 of the Act of Septem-

ber 11, 1957 (Public Law 85–316) and has so ordered. I have concluded that the latter orders should be overruled.

The question presented by the cases involves the authority of the Board to grant a waiver in light of the provisions of 8 CFR 212.7 (a), which requires that an application be made with the Service in accordance with established procedures.

The Board's delegated authority, which is as broad as the Attorney General's in the areas which are under its jurisdiction, is at the same time subject to specific limitations and falls short of the authority it has attempted to exercise in these cases. The limits of the Board's jurisdiction are described in 8 CFR 3.1(b). Decisions involving an application for an exercise of the discretionary authority contained in sections 5 and 7 of the Act of September 11, 1957, are not among the decisions there listed to which its appellate jurisdiction extends. Accordingly, the jurisdiction of the Board is not established, and it must therefore be said to reside in the Commissioner of the Immigration and Naturalization Service pursuant to the delegation made by 8 CFR 2.1. Disposition of the request for a waiver in the instant cases must, therefore, proceed in accordance with the provisions of 8 CFR 212.7(a).

It is true as urged that the Board's powers embrace "the exercise of such discretion and authority as is appropriate and necessary for the disposition of the case," but these too are subject to the limitations prescribed by the regulations and are confined to the jurisdiction in which the Board is authorized to operate.

### APPENDIX "A"

U.S. DEPARTMENT OF JUSTICE
BOARD OF IMMIGRATION APPEALS

DEC. 1—1955

File: A–4218988—El Paso

IN THE MATTER OF N——R——H——

#### IN EXCLUSION PROCEEDINGS

EXCLUDABLE: *Section* 212(a)(26(B)—No nonimmigrant visa or border crossing card.
Section 212(a)(2)—Departed from the United States to avoid military service.

The appellant is a 29-year-old married male, a native and citizen of Mexico who applied for admission to the United States on June 2, 1955, as a visitor for the purpose of buying necessities for himself and his family. He was excluded on the ground that he was

without nonimmigrant documents and on the ground that he had departed from the United States and remained outside the United States to avoid training or service in the Armed Forces (section 212(a)(22) of the Immigration and Nationality Act).

We affirmed the excluding decision. However, we found that the appellant's need to enter the United States was sufficient to require the grant of relief to him. To meet these needs, admission for short visits over a period of one year was authorized, if he were otherwise admissible than as one who had departed from and remained outside the jurisdiction of the United States to avoid military service. This action was taken under the authority contained in section 212(d)(3) of the Immigration and Nationality Act.

Motion is now made by the Service for a reconsideration of our action. It is asked that we withdraw the relief granted and dismiss the appellant's appeal. The motion states that it is improper to grant the alien discretionary relief because he had not applied for such relief; because he had not paid a $25 fee required of applicants for such relief and because the facts do not justify the granting of relief.

The alien could have properly applied, either orally or in writing, for relief under section 212(d)(3) before the special inquiry officer (8 CFR 212.82). He would have paid a $25.00 fee when he made his application for relief and then if he were ordered excluded and relief was denied, he could have filed an appeal which would have brought before us, both the issue of his admissibility and the request for discretionary relief.[1]

Because he did not apply for the relief and pay the fee of $25.00 for filing the application,[2] the Service desires that his case be returned to the field, with the bare notification to the alien that he was excluded. Apparently, he will then learn in some manner that he may make application for discretionary relief under section 212 (d)(3) of the act; he will be required to submit an application for such relief and pay the $25 fee for filing it. The application will then be acted upon by the district director having administrative jurisdiction over the place where the examination is being conducted. If the district director denies the application, appeal may then be taken to this Board, upon payment of an appeal fee of $10.00. Such circuitous action is unnecessary and of benefit neither to the Government nor the alien, and in the circumstances before us, would be unworthy conduct.

[1] The alien did pay a $25 fee for filing his appeal from the excluding decision.

[2] There is no showing that he has ever been asked to pay this fee or advised at the hearing of his right to ask for relief.

The action in remanding this case to the field to apply formally for relief is unnecessary because we have the power to grant all relief that is necessary to make disposition of this case (8 CFR 6.1 (d) see *Matter of S——N——*, 6 I. & N. Dec. 73).

Furthermore, under the circumstances of this case, to make the alien renew his efforts to enter the United States after having waited so long for a determination would not befit the government. An analysis of the facts before us reveals that when the alien applied for admission, he was interested not in gaining immediate entry, but in determining how he could enter the United States when the time came. The alien, who is a native and citizen of Mexico, would be admissible to the United States as a temporary visitor only if he were in possession of United States documents entitling him to enter as a visitor. *He has no such documents and makes no claim to having such documents. He does not claim that he is not required to be in possession of documents.* It is inconceivable that with the education possessed by the alien and the fact that he is a resident of a border town adjoining a port of entry, he would have made application for permission to enter the United States without being in possession of documents, unless he had some motive other than in seeking immediate admission. The fact that under these circumstances the appellant submitted his case to a special inquiry officer reveals that he did not have the intention of attempting to enter the United States at the moment. His intention could have been only to determine what status he would have if he applied for admission in possession of appropriate documents. The appellant's need to enter the United States to purchase necessities reveals that his desire to know his status was not the result of a thirst for theoretical information by one who did not intend to enter the United States. His submission to the immigration authorities was a practical way (apparently often suggested by Service personnel) for determining his status as one who desired to enter the United States. Since it is obvious that the alien was primarily interested in *determining how he could enter* the United States to take care of the needs of his family, we believe it would have been most appropriate to inform this alien at his hearing of his right to apply for discretionary relief to waive the ground of inadmissibility which had been found to exist (8 CFR 212.82). In the absence of such advice to the alien, under the circumstances existing here, we do not believe that either he or the Government should be compelled to go through the formalities the Service requires to bring this matter to the attention of the Board. We rule, therefore, that the alien's action in submitting himself to the authorities for a determination of his immigration status, under the circumstances here found, carried with it a request for such relief as might be neces-

337

sary to make his admission possible. The failure of the Government to inform him that an express application was required and that a special fee had to be paid will not deprive him of his right to have a ruling upon his application which was submitted so many months ago.

As to the failure to pay the $25 fee for filing an application for discretionary relief, this is a matter for the Service to take up with the alien. We do not act as a collection agent for the Service in these matters.

The Service contends that the reason for the alien desiring to enter the United States—to buy necessities for himself and his family—is not urgent or compelling. The Service and this Board have both, in the past, taken administrative notice that it would work an undue hardship upon the aliens residing in Mexico near the border if they were not permitted to enter the United States to obtain ordinary necessities. In answer to the Service motion, the alien has supplied the additional information that he will accompany his wife to a doctor in the United States as she cannot speak English well.

**Order:** It is ordered that the motion be and the same is hereby denied.

APPENDIX "B"

DEPARTMENT OF STATE,
*Washington, July 17, 1959.*

In reply refer to VO 150.1/6–2659

DEAR MR. FINUCANE:

In response to your letter of June 26, 1959 In re DeG——, File No. A–10644351, I am glad to provide you the following information:

1. In an ordinary case of an alien abroad who has been refused a visa by a consular officer and claims eligibility to a waiver, the consular officer provides the alien with a Form I–601 inserting in it the technical information regarding the visa refusal. The alien then completes the form and returns it to the consular officer who forwards it to the appropriate office of the Immigration and Naturalization Service without attachments or recommendation. The INS thereafter makes suitable arrangements consonant with the circumstances of the case to interview the alien and to consult such files concerning the alien as may be in the consular office.

2. In the case of an alien in the United States who has been admitted to the preexamination privilege, the consular officer on being notified by the INS or on ascertaining from some other source that the alien would be ineligible to receive a visa on grounds that could

be overcome by a waiver under section 5 or 7 makes an appointment for formal application by the alien subject to the extension of a waiver by the INS. Where the consular officer has the information, he may provide the alien with a Form I-601 in which the technical data are filled out. Such form is then completed by the alien and submitted direct to the INS. In other cases, the alien obtains a Form I-601 from the INS and submits it direct to the INS. The consular officer learns that a waiver has been granted the alien when he receives a copy of the order embodying the waiver. Such orders are sometimes mailed to the consular officer and sometimes are brought by the alien along with his other documents when he comes abroad to the consular office. When there is a refusal of the waiver by the INS, the consular officer learns of that refusal sometimes by written communication from the INS and sometimes merely because the alien fails to appear for his appointment.

It is hoped that the foregoing information is satisfactory for your needs.

Sincerely yours,

/s/   Robert J. Cavanaugh,
ROBERT J. CAVANAUGH,
*Acting Director, Visa Office.*

Mr. THOMAS G. FINUCANE,
*Chairman, Board of Immigration Appeals,*
*Department of Justice.*