# MATTER OF GRINBERG

## In Deportation Proceedings

### A-71571961

### *Decided by Board November 22, 1994*

Notwithstanding a clerical error in the redundant designation of "section 245(i)" of the Immigration and Nationality Act, to be codified at 8 U.S.C. § 1255(i), immigration judges have jurisdiction to entertain applications for relief based on both the section 245(i) that was created through section 506(b) of the Departments of Commerce, Justice, and State Appropriations Act for 1995, Pub. L. No. 103-317, 108 Stat. 1724, 1765, and the separate section 245(i) that was created through section 130003 of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2024.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1)(B) [8 U.S.C. § 1251(a)(1)(B)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Jolanta Kasztelewicz, Esquire
David M. Sturman, Esquire
The Atrium
16530 Ventura Boulevard, Suite 306
Encino, California 91436

ON BEHALF OF SERVICE:
Margaret Reichenberg
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members; Holmes, Alternate Board Member

In a decision dated October 4, 1994, an immigration judge found the respondent deportable as a nonimmigrant who remained longer than permitted, granted the respondent voluntary departure, and denied his Motion to Request Additional Relief in the form of an adjustment of status based on section 245(i) of the Immigration and Nationality Act (to be codified at 8 U.S.C. § 1255(i)). The immigration judge found that he lacked jurisdiction to consider such an application for relief, because the version of section 245(i) upon which the respondent sought to rely had been superseded by subsequent legislation. On October 6, 1994, the immigration judge certified his decision to this Board for review pursuant to regulations at 8 C.F.R.

§ 3.1(c) (1994). Upon consideration, the decision of the immigration judge will be vacated, and the record will be remanded for further proceedings.

The sole issue presented for our resolution upon certification is whether an immigration judge has jurisdiction over applications for relief based upon "section 245(i)" of the Act, as enacted on August 16, 1994, through section 506(b) of the Departments of Commerce, Justice, and State Appropriations Act for 1995, Pub. L. No. 103-317, 108 Stat. 1724, 1765 ("Appropriations Act"), in light of the unusual fact that a new "section 245(i)" was enacted less than 3 weeks later through section 130003 of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2024 ("Crime Control Act").[1] We conclude that both sections 245(i) are effective, that they create separate adjustment eligibility provisions, and that the immigration judge has jurisdiction over applications based on these subsections.

We begin by observing that the object of statutory construction is to determine congressional intent with respect to the legislation enacted. The paramount index of congressional intent is the plain meaning of the words used in the statute taken as a whole. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Phinpathya v. INS*, 464 U.S. 183, 189 (1984). Whenever possible, statutes should be read as consistent with one another. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468 (1982). Accordingly, we must not lightly presume that existing law is repealed by subsequent legislation in the absence of clear legislative language expressing an intent to repeal. 1A N. Singer, *Sutherland Statutory Construction* §§ 23.09, 23.10 (4th ed. 1985).

An examination of the words Congress used in the Crime Control Act shows no evidence of any intent to repeal the original section 245(i), which Congress had enacted less than 3 weeks earlier in the Appropriations Act, and which had not even gone into effect. Since there was no expressed repeal of the provision in question, a conclusion that the original section 245(i) was repealed could only be reached upon a finding of repeal by implication. In this case, the immigration judge made such a finding, determined that the later enacted statute repealed the prior statute, and concluded that he had no jurisdiction to entertain the respondent's application for adjustment of status.

We disagree with the immigration judge's conclusion. As the Supreme Court has stated repeatedly over the course of more than a

---

[1] The legislative vehicles for these Acts, H.R. 4603 and H.R. 3355, 103d Congress, 2d Sess. (1994), will be referred to as the "Appropriations Bill" and the "Crime Bill," respectively.

century and a half, it is a cardinal rule of statutory construction that repeals by implication are not favored. *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251 (1992); *United States v. Fausto*, 484 U.S. 439 (1988); *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 456-57 (1945); *Posadas v. National City Bank*, 296 U.S. 497 (1936); *Wood v. United States*, 41 U.S. 342 (18 42). Indeed, repeal by implication will not be found unless intent to repeal is "clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citations omitted). Thus, "'[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.'" *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 787 (1981) (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974); *see also United States v. Fausto, supra* (requiring "clear repugnancy"); *Georgia v. Pennsylvania R.R. Co., supra.*

Applying these principles to the instant case, we observe that the plain substantive language of the two enactments in question is not irreconcilable, nor even slightly ambiguous as to the intended effect. Rather, the relevant language evinces a clear congressional intent to add two separate, new provisions to existing law. Specifically, section 506(b) of the Appropriations Act created an exception to the usual adjustment of status provisions, so that certain aliens who are out of legal status, such as the respondent here, may nevertheless apply for adjustment under section 245(a) of the Act. Section 130003 of the Crime Control Act, on the other hand, offers the new possibility of adjustment of status to a separate, newly created category of nonimmigrant aliens who have fulfilled a promise to supply the United States with certain critical information. The substance of neither of these provisions conflicts in any way with the substance of the other.

Further, as the Immigration and Naturalization Service correctly points out in its well-written brief in this matter, the legislative history of the Crime Bill does not indicate an intent to repeal any existing law under section 245. The Crime Control Act and the Appropriations Act both indicate that the relevant amendment in each case creates a "new" subsection under section 245 and that no existing portion of that section is to be repealed. Each act states: "Section 245 of the Immigration and Nationality Act, *as amended* (8 U.S.C. 1255), is amended *by adding at the end* thereof the following *new* subsection." (Emphasis added).

We note that the bills in question made their way through the legislative process more or less simultaneously. It could not have been known with certainty when the relevant provisions were introduced that either or both of the bills would be enacted as written—much less

913

which would be enacted first. Thus, it is no surprise that each bill designated its "new" subsection identically, as subsection "(i)," to follow the existing subsections (a) through (h). All the relevant evidence indicates that in the period of less than 3 weeks between the passage of the Appropriations Bill and the Crime Bill, the duplication of subsection "(i)" in the Crime Bill was simply overlooked.

In view of the foregoing, we conclude that the redundant subsection designation at section 245 of the Act is properly understood for what it clearly is, namely, a clerical oversight. Since there exists no inconsistency in the substantive language of the legislation in question, and since there was no express repeal, our duty is to give force and effect to both acts of Congress, and not to a clerical error. *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 82-83 (1932).[2]

Accordingly, we conclude that the immigration judge in this case had jurisdiction to entertain the respondent's application for adjustment of status under section 245(i) of the Act, and denial of the respondent's prehearing motion to apply for relief under this subsection was unnecessary. Consequently, the decision of the immigration judge will be vacated and the record will be remanded for further proceedings.

**ORDER:**  The decision of the immigration judge is vacated.

**FURTHER ORDER:**  The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion.

---

[2] The Service argues erroneously in its brief that the Board owes substantial deference to the Service's own administrative interpretation of the statutory law. *See* 59 Fed. Reg. 51,091, 51,094 (1994). However, we exercise our judgment independently of the Service, and our decisions are binding on all officers and employees of the Service in the administration of the Act. 8 C.F.R. §§ 2.1, 3.0, 3.1(g) (1994) (setting forth the authority of the Board); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (discussing the duty of the Board to exercise its own independent judgment where the Attorney General has, by regulation, delegated this responsibility to the Board).