# In re Ada Rosa ARTIGAS, Respondent

File A76 543 602 - Miami

*Decided May 11, 2001*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An Immigration Judge has jurisdiction to adjudicate an application for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended, when the respondent is charged as an arriving alien without a valid visa or entry document in removal proceedings.

FOR RESPONDENT: Rodrigo Villar, Esquire, Miami, Florida

AMICI CURIAE[1]: Eugenio Hernandez, Esquire; Maria R. Dominguez, Esquire; and Adalsinda Lomangino, Esquire, Miami, Florida

AMICI CURIAE[1]: Joan Friedland, Esquire, and Rebecca Sharpless, Esquire, Miami, Florida

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Sylvia Alonso, Appellate Counsel

BEFORE: Board En Banc: DUNNE, Vice Chairman; SCHMIDT, HURWITZ, VILLAGELIU, GUENDELSBERGER, ROSENBERG, MOSCATO, MILLER, BRENNAN, ESPENOZA, and OSUNA, Board Members. Concurring Opinion: HOLMES, Board Member. Dissenting Opinion: FILPPU, Board Member, joined by SCIALABBA, Acting Chairman; HEILMAN, COLE, MATHON, JONES, and GRANT, Board Members.[2]

VILLAGELIU, Board Member:

In a decision dated February 9, 1999, an Immigration Judge found the respondent removable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994 & Supp. V 1999), as an immigrant not in possession of a valid visa or other suitable travel document, and granted her application for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended ("Cuban Adjustment Act"). The Immigration and Naturalization

---

[1] This Board acknowledges with appreciation the thoughtful arguments raised in the briefs submitted by amici curiae.

[2] Board Member Kevin A. Ohlson did not participate in the decision in this case.

Service appealed.  We heard oral argument in this case on June 20, 2000.  Because we concur with the decision of the Immigration Judge, the appeal will be dismissed.

## I.  FACTS AND PROCEDURAL HISTORY

The respondent, a female native and citizen of Cuba, was served with a Notice to Appear (Form I-862) by the Service when she arrived without a visa and was paroled into the United States on January 16, 1998.  In proceedings before the Immigration Judge, the respondent admitted the factual allegations set forth in the Notice to Appear and conceded removability as charged.  The Immigration Judge then granted the respondent's application for adjustment of status under the Cuban Adjustment Act.  This appeal followed.

## II.  ISSUE PRESENTED

The issue before us is whether an Immigration Judge has jurisdiction to adjudicate the respondent's application for adjustment of status under the Cuban Adjustment Act, when the respondent is charged as an arriving alien without a valid visa or entry document and is placed in removal proceedings.  The Service contends that, pursuant to 8 C.F.R. §§ 245.1(c)(8) and 245.2(a)(1) (2001), Immigration Judges are precluded from exercising jurisdiction over Cuban Adjustment Act applications filed by arriving aliens in removal proceedings.  We disagree and find that Immigration Judges do, in fact, have such jurisdiction.

## III.  ANALYSIS

Whether an Immigration Judge has jurisdiction to consider an application for adjustment under the Cuban Adjustment Act depends on the authority afforded under the regulations that were adopted by the Attorney General in 1997.  As we have previously stated, the principles that apply to statutory construction also apply to regulations promulgated by the Attorney General.  *Matter of Masri*, Interim Decision 3419 (BIA 1999).  Accordingly, there is "no more persuasive evidence of the purpose of a [regulation] than the words by which the [Attorney General] undertook to give expression to [her] wishes."  *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966).  If the language is clear, our inquiry is at an end.  This Board and the Immigration Judges "must give effect to the unambiguously expressed intent" of the Attorney General.  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *Matter of W-F-*, 21 I&N Dec. 503, 506 (BIA 1996).

In addition, a statute or regulation should be construed so that effect is given to all its provisions and no part of it will be inoperative, superfluous, void, or insignificant.  *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, at 104 (4th ed. 1984); *see also Matter of Grinberg*, 20 I&N Dec. 911

(BIA 1994).  It is a court's "duty 'to give effect, if possible, to every clause and word of a statute.'"  *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quoting *Inhabitants of Montclair Township v. Ramsdell*, 107 U.S. 147, 152 (1883)).  "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988).  Keeping in mind these rules of construction, we turn now to the regulation at issue.

## A.  Regulatory Framework

### 1.  Applicable Provisions

Immigration Judges have been granted the authority to determine removability and to adjudicate applications for relief from removal.  8 C.F.R. § 240.1(a) (2001).  An Immigration Judge's jurisdiction includes the authority to consider applications for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1994 & Supp. V 1999), as well as applications for various other forms of relief.  8 C.F.R. § 240.1(a)(1)(ii).  As we noted in a decision issued after the Immigration Judge rendered his decision in this case, 8 C.F.R. § 240.11(a)(2) (1999) affords Immigration Judges jurisdiction to adjudicate certain waivers of inadmissibility that may be filed in conjunction with an application for adjustment of status.  *Matter of H-N-*, Interim Decision 3414 (BIA 1999) (holding that Immigration Judges have jurisdiction to adjudicate a request for a waiver of inadmissibility under section 209(c) of the Act, 8 U.S.C. § 1159(c) (1994 & Supp. II 1996), following the initial denial of such a waiver by the Service).  An application for relief under section 209 of the Act is not *specifically* listed in 8 C.F.R. § 240.1(a)(1)(ii) as one that may be adjudicated by an Immigration Judge.  The Attorney General's regulations also specifically provide the following:

> In a removal proceeding, an alien may apply to the immigration judge for . . . adjustment of status under section 1 of the Act of November 2, 1966 (as modified by section 606 of Pub. L. 104-208) . . . .  The application shall be subject to the requirements of § 240.20, and 8 C.F.R. parts 245 and 249.

8 C.F.R. § 240.11(a)(1) (2001).  This provision resulted from an overall regulatory reorganization in 1997 that included the unification of separate exclusion and deportation proceedings into removal proceedings.  The supplementary information to that reorganization reiterates the authority of Immigration Judges to consider applications for relief under the Cuban Adjustment Act:

In a removal proceeding, an alien may apply to the immigration judge for cancellation of removal under section 240A of the Act, adjustment of status under section 245 of the Act, adjustment of status under section 1 of the [Cuban Adjustment Act] (as modified by section 606 of Pub. L. 104-132) . . . .

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 492 (1997) (codified at 8 C.F.R. § 240.11(a)(1)); *see also* 62 Fed. Reg. 10,312 (1997). Accordingly, the issue in this case is whether, as the Service contends, these regulatory provisions are subject to an exception that applies to adjustment of status applications under the Cuban Adjustment Act.

## 2.  Arguments on Appeal

The Service argues that the regulations governing adjustment of status, which provide a detailed statement of the manner in which such an application may be filed and considered, preclude jurisdiction in removal proceedings in the case of arriving aliens, regardless of whether they are applying under the Cuban Adjustment Act. The regulation in question states, in relevant part, as follows:

An alien who believes he or she meets the eligibility requirements of section 245 of the Act *or section 1 of the Act of November 2, 1966*, and § 245.1 shall apply to the [district] director having jurisdiction over his or her place of residence unless otherwise instructed in 8 C.F.R. part 245, or by the instruction on the application form. After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the [Cuban Adjustment Act] shall be made and considered *only* in those proceedings. An arriving alien, other than an alien in removal proceedings, who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 245.1 shall apply to the [district] director having jurisdiction over his or her place of arrival.

8 C.F.R. § 245.2(a)(1) (emphasis added). This regulation provides several different avenues for consideration of adjustment of status. An alien who wishes to apply for adjustment, whether under section 245 or the Cuban Adjustment Act, applies to the appropriate district director of the Service. An alien in removal or deportation proceedings may apply directly to the Immigration Judge. The Service contends, however, that "arriving aliens" can *only* apply to the district director because the regulations make no specific provision for adjustment applications by arriving aliens in removal proceedings whose applications have not been adjudicated initially by a district director. In other words, the regulation does not specifically state that an arriving alien may, or may not, initially seek adjustment of status under the Cuban Adjustment Act in removal proceedings before the Immigration Judge.

The Service argues further that, in addition to this omission, 8 C.F.R. § 245.1 establishes substantive limitations on adjustment of status. Specifically, 8 C.F.R. § 245.1(c) lists classes of aliens "ineligible to apply for adjustment of status to that of a lawful permanent resident alien under section 245 of the Act." These include "[a]ny arriving alien who is in removal proceedings pursuant to . . . section 240 of the Act." 8 C.F.R. § 245.1(c)(8). Although it concedes that this regulation does not specifically render arriving aliens ineligible for Cuban Adjustment Act relief, the Service argues that, coupled with 8 C.F.R. § 245.2(a)(1), the regulation implies a lack of jurisdiction in removal proceedings. On the other hand, the respondent argues that 8 C.F.R. § 240.11(a)(1) provides authority for Immigration Judges to consider the application of an arriving alien in removal proceedings for adjustment of status under section 1 of the Cuban Adjustment Act, and that the limitations set forth in other regulatory provisions do not apply to such an individual.

## B.  Application of Regulations to Respondent's Case

In applying the law to the facts of this case, we consider the form of jurisdiction, the regulations in the context of the previously applicable regulations, the regulations as implementing the Cuban Adjustment Act, the nature of the limitations on relief in the regulations, and general principles of construction. Having considered all of these factors, we conclude that the Immigration Judge did not err in exercising jurisdiction over the respondent's application for Cuban Adjustment Act relief.

## 1.  Jurisdiction

The means by which an Immigration Judge may be granted jurisdiction include a delegation of authority to adjudicate a specific application for relief. *See Matter of Ulloa*, Interim Decision 3393 (BIA 1999) (holding that the regulations specifically give Immigration Judges the authority to grant or deny an alien a waiver of inadmissibility under section 213 of the Act, 8 U.S.C. § 1183 (Supp. II 1996)). Where the regulations provide for the filing of an application for relief, to hold that jurisdiction does not result from such a delegation would render the provision nugatory and without meaning. In the case at hand, jurisdiction is established through a grant of authorization to file an application for relief that is specifically included in both 8 C.F.R. §§ 240.11(a)(1) and 245.2(a)(1). *See Matter of H-N-*, *supra*.

## 2.  Prior Regulations

The current regulations must also be viewed in light of the regulations that they replaced. Before the consolidation of deportation and exclusion proceedings into a unified removal procedure, the predecessor to 8 C.F.R.

part 245 granted Immigration Judges exclusive jurisdiction to adjudicate adjustment of status applications under section 245 of the Act and under section 1 of the Cuban Adjustment Act after deportation proceedings had been initiated. 8 C.F.R. § 245.2(a)(1) (1996); *see also Matter of Roussis*, 18 I&N Dec. 256, 257 (BIA 1982). Consequently, the addition in 1997 of the language "or removal proceedings" and "other than an arriving alien" to 8 C.F.R. § 245.2(a)(1) created an exception to such exclusive jurisdiction. To accept the argument that the Immigration Judge does not now have jurisdiction in removal proceedings would require us to accept the notion that jurisdiction has been withdrawn by implication. However, such a withdrawal of jurisdiction must be clearly and unequivocally stated. 3A Singer, *supra*, § 67.03, at 224.

## 3. Limitations on Relief

The regulations do not prescribe ineligibility. The current regulation at 8 C.F.R. § 245.1(c)(8) specifically provides that an arriving alien in removal proceedings is ineligible to adjust status to that of a lawful permanent resident "under section 245 of the Act." However, this provision does not state that arriving aliens in removal proceedings are ineligible to apply for adjustment of status under the Cuban Adjustment Act. We find no evidence that the Attorney General intended the prohibition on adjustment to apply to adjustment under the Cuban Adjustment Act, which provides visa availability and a means by which to adjust status to natives and citizens of Cuba, such as the respondent. To read the regulation's limiting provision expansively, so as to preclude applications under the Cuban Adjustment Act, would be contrary both to the express language of the regulation and to the remedial purpose of the relief that Congress established and deliberately retained in the same enactment through which it wrought a wholesale revision of the Act and its implementing regulations. *See* section 235(b)(1)(F) of the Act, 8 U.S.C. § 1225(b)(1)(F) (Supp. V 1999); *see also* Illegal Immigration and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 606, 110 Stat. 3009-546, 3009-695 ("IIRIRA") (exempting Cubans from expedited removal proceedings). To the contrary, 8 C.F.R. § 240.11(a)(1) specifically authorizes an alien in removal proceedings to apply to an Immigration Judge for such relief.

The language of the regulation itself calls the Service's interpretation into question. The well-settled rule of statutory construction, expressio unius est exclusio alterius, suggests that by specifically barring only section 245 relief in 8 C.F.R. § 245.1(c), but making no mention of relief under the Cuban Adjustment Act, the Attorney General has declined to exercise her discretion to bar Cuban Adjustment Act applications. *See* 2A Singer, *supra*, § 47.23, at 194; *Matter of Lazarte*, 21 I&N Dec. 214, 217 (BIA 1996); *cf. Matter of Oseiwusu*, Interim Decision 3344 (BIA 1998) (holding that, under 8 C.F.R.

§ 236.1(c)(5)(i) (1997), an Immigration Judge has no authority over the apprehension, custody, and detention of arriving aliens).

This interpretation is consistent with our holding in *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996), that, in exclusion proceedings, jurisdiction over an alien's application for adjustment of status generally lies with the district director of the Service. In that decision, we found that 8 C.F.R. §§ 245.2(a) and 236.4 (1994) granted limited jurisdiction to the Immigration Judge in exclusion proceedings to adjudicate adjustment applications under section 245 of the Act that had been denied by the district director, but only if the alien, after first having been inspected and admitted into the United States, had applied to adjust status and then departed the country under a grant of advance parole. *Id.* In *Matter of Castro*, we were not considering an application for adjustment of status under the Cuban Adjustment Act.

In the instant case, the respondent was paroled into the United States after January 1, 1959. She had acquired the requisite 1 year of physical presence before the Immigration Judge issued a decision in her case. She therefore met the statutory requirements of section 1 of the Cuban Adjustment Act.[3] The regulation at 8 C.F.R. § 240.11(a)(1) authorizes applications for adjustment of status in removal proceedings. In light of the Service's decision to commence proceedings, the respondent cannot effectively submit an application for such relief to the district director because the regulations specifically state that "[a]n arriving alien, *other than an alien in removal proceedings*, who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 245.1 shall apply to the [district] director having jurisdiction over his or her place of arrival." 8 C.F.R. § 245.2(a)(1) (emphasis added).

Were we to find that the regulations implicitly deprive an Immigration Judge of jurisdiction to consider applications for adjustment of status under the Cuban Adjustment Act, this statutory form of relief would become meaningless, despite the fact that it resolves the dispositive issue in these proceedings. *See Matter of Garcia*, 21 I&N Dec. 254, 257 (BIA 1996) (affirming the power of the Immigration Judges and the Board to exercise the Attorney General's discretion as is appropriate and necessary for the disposition of the case, particularly where the only ground of deportability or inadmissibility would otherwise be eliminated or where the alien would receive a grant of adjustment of status); *Matter of S-N-*, 6 I&N Dec. 73 (BIA, A.G. 1954); 8 C.F.R. § 240.1(a)(2); *see also Matter of Ng*, 17 I&N Dec. 63, 64 (BIA 1979); *Matter of Ducret*, 15 I&N Dec. 620, 621 (BIA 1976); *Matter of Vrettakos*, 14 I&N

---

[3] The Service has raised only the jurisdictional issue on appeal and has pointed to no other reason why the Immigration Judge should have denied the respondent's application for relief. Accordingly, we find it unnecessary to address other factors that would preclude a grant of relief.

Dec. 593, 597 (BIA 1973, 1974); 8 C.F.R. § 3.1(d)(1) (2001).  However, the Cuban Adjustment Act is a specific grant of authority to adjust the status of Cubans who could not fulfill the requirements of section 245 of the Act.  The Cuban Adjustment Act must therefore be considered separate and apart from adjustment of status under section 245 of the Act.  *See Cuban American Bar Ass'n v. Christopher*, 43 F.3d 1412 (11th Cir. 1995); *Fernandez-Roque v. Smith*, 734 F.2d 576 (11th Cir. 1984); *Silva v. Bell*, 605 F.2d 978 (7th Cir. 1979).

## IV.  CONCLUSION

Accordingly, having considered the Act, the Cuban Adjustment Act, and the regulations, we are not persuaded by the Service's arguments that the Immigration Judge lacked jurisdiction to grant relief under the Cuban Adjustment Act.  We find that an Immigration Judge has jurisdiction to consider an application for adjustment of status under the Cuban Adjustment Act made by a respondent charged in removal proceedings as an arriving alien without a valid visa.  We find further that, in the instant case, the Immigration Judge properly considered the respondent's application for adjustment of status under the Cuban Adjustment Act.  Accordingly, the Service's appeal will be dismissed.

**ORDER:**  The appeal of the Immigration and Naturalization Service is dismissed.

*CONCURRING OPINION:*  David B. Holmes, Board Member

I respectfully concur.  While I agree with much of the dissent's articulation of both the prior and current law pertinent to this case, I do not find that the majority's ruling is either inconsistent with the "literal language" of the governing regulations or that it "directly conflicts" with *Matter of Manneh*, 16 I&N Dec. 272 (BIA 1977).[1]  *See Matter of Artigas*, 23 I&N Dec. 99, 109 (Filppu, dissenting).

The issue in this case is whether an Immigration Judge has jurisdiction over an application for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended ("Cuban Adjustment Act"), filed by an arriving alien who has been placed in removal proceedings without previously having had such an application adjudicated by a district director.[2]

---

[1]  I assume the reader's familiarity with the majority and dissenting opinions in this case.

[2]  An arriving alien placed in removal proceedings after such an application has been denied by a district director cannot renew the application before an Immigration Judge unless the alien is a parolee who meets the two conditions described in 8 C.F.R. § 245.2(a)(1) (2001).

(continued...)

If the jurisdictional issue in this case rested solely on the "appropriate and necessary" clause in 8 C.F.R. § 240.1(a)(2) (2001), then I would agree with the dissent that *Matter of Manneh*, *supra*, controls and that the Immigration Judge lacked jurisdiction over this application for adjustment of status. However, the pertinent regulations at issue here are significantly different from those at issue in *Matter of Manneh*. Wholly aside from the "appropriate and necessary" clause in the current regulations, 8 C.F.R. § 240.11(a) (2001) specifically provides as follows: "In a removal proceeding, an alien may apply to the immigration judge for . . . adjustment of status under section 1 of the Act of November 2, 1966 . . . . The application shall be subject to the requirements of . . . 8 CFR part[] 245 . . . ." There was nothing akin to this grant of authority to Immigration Judges in the regulations pertaining to exclusion proceedings that were at issue in *Matter of Manneh*. *See* 8 C.F.R. part 236 (1977).

It is agreed that Immigration Judges have jurisdiction over some applications for adjustment of status under the Cuban Adjustment Act. The *only* reference to such authority in 8 C.F.R. part 240 is in 8 C.F.R. § 240.11(a). Therefore, it would be difficult to conclude that § 240.11(a) is not in some way a jurisdictional provision. In my view, the determinative issue in this case involves the meaning of the language in § 240.11(a) that specifies that an application to an Immigration Judge for adjustment under section 1 of the Act of November 2, 1966 "shall be subject to the requirements" of 8 C.F.R. part 245 (2001).

This "subject to the requirements" language in 8 C.F.R. § 240.11(a) appears to be amenable to one of two interpretations. It could mean that Immigration Judges have jurisdiction over applications for adjustment of status under the Cuban Adjustment Act *only* to the extent that such jurisdiction is *explicitly* provided for in 8 C.F.R. part 245, which seems to be the reading advanced by the dissent. Or, this language could be read as providing that the *grant of jurisdiction* in § 240.11(a) to Immigration Judges over applications for adjustment under the Cuban Adjustment Act is subject to the general requirements of 8 C.F.R. part 245; and there is nothing in part 245 that *explicitly limits* the Immigration Judges' jurisdiction over such applications filed by arriving aliens who have been placed in removal proceedings without previously having had an application for adjustment under the Cuban Adjustment Act adjudicated by a district director. That is, there is no provision in part 245 stating that arriving aliens in removal proceedings are ineligible to apply for adjustment of status under the Cuban Adjustment Act that is equivalent to the provision in 8 C.F.R. § 245.1(c)(8), which *explicitly* states that arriving aliens in removal proceedings pursuant to section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a (Supp. V 1999), are ineligible to apply for

---

[2](...continued)
*See* 8 C.F.R. § 245.2(a)(5)(iii).

adjustment of status *under section 245 of the Act*, 8 U.S.C. § 1255 (1994 & Supp. V 1999).

The dissent provides a reasoned basis for its reading of the regulations, and its interpretation may be that which was intended by the Attorney General in 1997 in implementing these provisions in 8 C.F.R. parts 240 and 245. However, it is not clear to me that the dissent is correct. I think the regulatory provisions are amenable to more than one reading. It would have been easy to have included a provision in the regulations equivalent to that set forth in 8 C.F.R. § 245.1(c)(8) if the intent was to render arriving aliens in removal proceedings ineligible for adjustment under the Cuban Adjustment Act. As the dissent acknowledges, the principal focus of the commentary accompanying these regulations seemed to be on applications for adjustment of status under section 245 of the Act. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 452 (1997) (codified at 8 C.F.R. pt. 245); 62 Fed. Reg. 10,312, 10,326-27 (1997) (codified at 8 C.F.R. pt. 245). There certainly was no explicit discussion of the Cuban Adjustment Act in the relevant commentary.

Furthermore, the legislative history accompanying the enactment of the Cuban Adjustment Act in 1966 reflects that the purpose of the bill was

> to permit natives or citizens of Cuba who were inspected and admitted or paroled into the United States, subsequent to January 1, 1959, to apply for adjustment of status to lawful permanent resident status and to have the status adjusted in the discretion of the Attorney General if they are otherwise eligible to receive an immigrant visa and be admissible into the United States.

H.R. Rep. No. 89-1978, at 1 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3792. This language indicates a congressional intent that paroled Cubans at least have an opportunity to apply for adjustment under the Cuban Adjustment Act. Under the dissent's reading of the current regulations, an inspected and paroled Cuban "arriving alien" who is placed into removal proceedings without having had the opportunity to apply for adjustment under the Cuban Adjustment Act before the district director will never have an opportunity to apply for such adjustment. This would be a significant change from the prior law, as implemented by regulation. Previously, a paroled Cuban who was placed into exclusion proceedings without having had an opportunity to apply for adjustment under the Cuban Adjustment Act could not apply for adjustment before the Immigration Judge; however, the alien could still apply for adjustment before the district director, who could act on the application independent of the exclusion proceedings. *See Matter of Castro*, 21 I&N Dec. 379 (BIA 1996); *Matter of Manneh*, *supra*; *Matter of C-H-*, 9 I&N Dec. 265 (R.C. 1961). Thus, under the prior regulatory provisions, a paroled Cuban would at least have had an opportunity to apply for adjustment, whether before a district director, an Immigration Judge, or both. Given the relevant legislative history noted above,

and absent clearer language in the regulations or in the supporting commentary to the regulations, I am not persuaded that the current regulations should be read in a manner that, for the first time, would bar a category of paroled natives or citizens of Cuba from even applying for adjustment under the Cuban Adjustment Act.

Accordingly, I would not reverse the Immigration Judge's decision in this case.

*DISSENTING OPINION*: Lauri Steven Filppu, Board Member, in which Lori L. Scialabba, Acting Chairman; Patricia A. Cole, Lauren R. Mathon, Philemina McNeill Jones, and Edward R. Grant, Board Members, joined

I respectfully dissent.

The question before us is whether Immigration Judges and the Board have jurisdiction in removal proceedings over applications, filed by arriving aliens, for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended ("Cuban Adjustment Act"). The majority finds such jurisdiction to exist, but its ruling is inconsistent with the literal language of the governing regulation and the context and history in which it was promulgated.

As explained below, the majority's ruling directly conflicts with our decision in *Matter of Manneh*, 16 I&N Dec. 272 (BIA 1977), which found that jurisdiction over adjustment of status applications cannot arise in the absence of a specific, affirmative grant of such authority and cannot stem from the "appropriate and necessary" clause currently found in 8 C.F.R. §§ 3.1(d) and 240.1(a)(2) (2001). The majority further wrongly implies that its ruling merely prevents a withdrawal of Immigration Judge jurisdiction, even though the regulation at issue only withdraws jurisdiction from district directors, not from Immigration Judges, in certain categories of cases where jurisdiction previously existed only for district directors.

## I. PRIOR LAW

A brief look at the workings of earlier law is important because the current regulatory provisions flow directly from their predecessor provisions, but with changes occasioned by the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). Under prior law, an applicant under the Cuban Adjustment Act could not present his or her application to an Immigration Judge if the alien was in the functionally equivalent position of what is today known as an "arriving alien," unless the alien fell within a narrow exception pertaining to advance parole, an exception that has been preserved in the current regulations, but which does not apply to the respondent.

The respondent is an applicant for admission who was paroled into the United States and otherwise fits the description of an "arriving alien" under current law. *See* 8 C.F.R. § 1.1(q) (2001). Arriving aliens who do not appear to be admissible may be placed in what, following the enactment of the IIRIRA, are termed "removal" proceedings. Prior to the IIRIRA, however, inadmissible arriving aliens would have been treated as excludable aliens and would have been subject to "exclusion" proceedings before Immigration Judges.

With one minor exception, the prior regulations denied Immigration Judges any jurisdiction over adjustment of status applications by aliens in exclusion proceedings and only permitted such jurisdiction as to aliens who were in deportation proceedings. An excludable alien could only apply for adjustment of status to a district director of the Immigration and Naturalization Service, unless the alien had previously been admitted, had filed for adjustment, and had received advance parole specifically to allow the alien to leave the United States and return to pursue the adjustment application. *See Matter of Castro*, 21 I&N Dec. 379 (BIA 1996); 8 C.F.R. § 245.2(a)(1) (1996);[1] *see also Matter of Manneh*, *supra*; 8 C.F.R. § 245.2(a)(1) (1977) (providing for *no* jurisdiction by Immigration Judges over adjustment of status applications in exclusion proceedings prior to 1978).

This history is significant because the current regulation is not written to *extend* to Immigration Judges jurisdiction they never previously had over

---

[1] Immediately prior to enactment of the IIRIRA, 8 C.F.R. § 245.2(a)(1) (1996) provided, in pertinent part:

*Jurisdiction.* An alien who believes he meets the eligibility requirements of section 245 of the Act or section 1 of the [Cuban Adjustment Act] . . . shall apply to the director having jurisdiction over his place of residence . . . . After an alien has been served with an order to show cause or warrant of arrest, his application for adjustment of status under section 245 of the Act or [the Cuban Adjustment Act] . . . shall be made and considered only in [deportation] proceedings under part 242 of this chapter. An adjustment application by an alien paroled under section 212(d)(5) of the Act, which has been denied by the director, may be renewed in exclusion proceedings under section 236 of the Act only under the following two conditions: First, the denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; second, the applicant's later absence from and return to the United States must have been under the terms of an advance parole authorization on Form I-512 granted to permit the applicant's absence and return to pursue the previously filed adjustment application.

Similarly, 8 C.F.R. § 245.2(a)(5)(iii) (1996) provided, in relevant part:

*Under the Act of November 2, 1966.* . . . No appeal lies from the denial of an application by the director, but the applicant retains the right to renew his or her application in proceedings under part 242 of this chapter [deportation proceedings], or under part 236 [exclusion proceedings], if the applicant is a parolee and meets the two conditions outlined in paragraph 1 of § 245.2(a)(1).

adjustment applications submitted by aliens stopped at the border upon arrival. Rather, it is written to *withdraw* jurisdiction from district directors over adjustment of status applications submitted by arriving aliens who have been placed in removal proceedings.

## II.  CURRENT LAW

Through the enactment of the IIRIRA, Congress merged the separate deportation and exclusion proceedings of prior law into one form of "removal" proceedings.  That merger required the promulgation of new regulations. Proposed regulations to implement the IIRIRA were issued on January 3, 1997. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444-501 (1997).  These proposed rules contained the new "arriving alien" definition as well as revisions to the adjustment of status regulations.  The supplementary information to the proposed new rules explained, in part, as follows:

> Adjustment of status is granted in the discretion of the Attorney General.  Consistent with Congress' intent that arriving aliens . . . be removed in an expedited manner through the procedures provided in section 235(b)(1) of the Act, the Attorney General has determined that she will not favorably exercise her discretion to adjust the status of arriving aliens who are ordered removed pursuant to section 235(b)(1) of the Act *or who are placed in removal proceedings under section 240 of the Act . . . .* If the Service decides as a matter of prosecutorial discretion, not to initiate removal proceedings but to parole the arriving alien, the alien will be able to apply for adjustment of status before the district director.

62 Fed. Reg. at 452 (codified at 8 C.F.R. pt. 245) (emphasis added).  Subsequent comments pertaining to the adoption of the final rules suggest that the focus of the new "arriving alien" provisions was on claims under the normal adjustment of status process contained in section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (1994 & Supp. V 1999), and not necessarily on Cuban Adjustment Act claims.  *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,326-27 (1997) (codified at 8 C.F.R. pt. 245) (indicating that the "policy" statement accompanying the proposed rules was in direct reference to proposed 8 C.F.R. § 245.1(c)(8), a regulation that does not specifically apply to Cuban Adjustment Act cases).  Nevertheless, neither the regulations nor the commentary drew any distinction between normal adjustment cases under section 245 of the Act and Cuban Adjustment Act cases in relation to the fundamental jurisdictional provisions governing both types of applications.

This brings us to the central point, which concerns the precise terms of the current regulations. The general authority regulation pertaining to removal proceedings, 8 C.F.R. § 240.1, does not give Immigration Judges jurisdiction over Cuban Adjustment Act applications. Instead, such jurisdiction is conferred in 8 C.F.R. § 240.11 titled "Ancillary matters, applications," which states that the adjustment "application shall be subject to the requirements of . . . 8 CFR part[] 245 . . . ." 8 C.F.R. § 240.11(a)(1).

Thus, the fundamental jurisdictional provision governing adjustment of status applications is in part 245 of the regulations, at 8 C.F.R. § 245.2(a)(1) (2001). This regulation provides, in relevant part, as follows:

> *Jurisdiction.* An alien who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966 [Cuban Adjustment Act], and § 245.1 shall apply to the director having jurisdiction over his or her place of residence . . . . After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the Act of November 2, 1966 shall be made and considered only in those proceedings. An arriving alien, other than an alien in removal proceedings, who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 245.1 shall apply to the director having jurisdiction over his or her place of arrival. An adjustment application by an alien paroled under section 212(d)(5) of the Act, which has been denied by the director, may be renewed in removal proceedings under 8 CFR part 240 only if:
>
>> (i) The denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; and
>
>> (ii) The applicant's later absence from and return to the United States was under the terms of an advance parole authorization on Form I-512 granted to permit the applicant's absence and return to pursue the previously filed adjustment application.

The literal language of this regulation shows that it is not confined to adjustment applications submitted under section 245 of the Act. The regulation repeatedly refers to both section 245 and section 1 of the Act of November 2, 1966, the Cuban Adjustment Act. It speaks to both "deportation" proceedings under prior law and "removal" proceedings under current law by providing that after aliens are in such proceedings, adjustment applications are to be made and considered only in those proceedings, unless the alien is an arriving alien. It then provides that arriving aliens can seek adjustment under section 245 or the Cuban Adjustment Act from a district director, unless the alien has been placed in removal proceedings. And, finally, it preserves the limited exception for aliens receiving advance parole to renew denied claims in removal proceedings before Immigration Judges.

The respondent here is a parolee, but she does not meet the requirements of the limited exception for previously admitted aliens with pending applications

who receive advance parole. A parolee may renew an adjustment application before an Immigration Judge in removal proceedings "only if" the two special advance parole conditions are met. *See* 8 C.F.R. § 245.2(a)(1). Had the respondent sought adjustment before the district director, she would be specifically barred from renewing that application before the Immigration Judge. It does not make sense to read the regulation, as the majority, in effect, does, to allow a parolee such as the respondent to escape this bar simply by filing directly with the Immigration Judge and avoiding the district director altogether.

Instead, reasonably read, these jurisdictional provisions give Immigration Judges authority to act on section 245 adjustment and Cuban Adjustment Act applications filed by aliens in removal proceedings, except that arriving aliens may only apply to district directors, and only then if the particular arriving alien has not been put in removal proceedings. The effect is to maintain the pre-IIRIRA regulatory structure, except for the withdrawal of district director jurisdiction over applications by arriving aliens placed in removal proceedings. This represents a contraction of jurisdiction, not an expansion, in comparison to prior law. And this should come as no surprise because it was precisely this contraction that was announced in the supplementary information to the proposed regulations implementing the IIRIRA.

The jurisdictional contraction that arises from a straightforward reading of the regulation is reinforced by 8 C.F.R. § 245.1(c)(8) (2001) as to normal section 245 applications. This regulation makes arriving aliens ineligible for section 245 adjustment of status if they are in removal proceedings. It does not, however, bar similar applications under the Cuban Adjustment Act. The absence of a substantive bar for Cuban Adjustment Act applicants raises a legitimate question as to whether the Attorney General actually meant to take away all jurisdiction over such applications filed by arriving Cubans who are placed in removal proceedings.

Regardless of what may have been intended, Immigration Judge jurisdiction over Cuban Adjustment Act applications simply does not arise, by virtue of a *substantive* regulatory bar for section 245 applicants, coupled with the absence of an identical substantive bar for arriving Cubans. Rather, in keeping with our ruling in *Matter of Manneh*, *supra*, we must first identify a *jurisdictional* regulation that enlarges the authority of Immigration Judges and the Board over applications filed by arriving aliens who seek adjustment of status under the Cuban Adjustment Act.

Furthermore, although there is no substantive bar for Cuban Adjustment Act cases that precisely parallels 8 C.F.R. § 245.1(c)(8), there is a related regulatory amendment that reinforces the meaning that emerges from the literal jurisdictional language of 8 C.F.R. § 245.2(a)(1). This amendment pertains to the effect of district director decisions on Cuban Adjustment Act applications

and the ability of denied applicants to obtain further review of their claims. Thus, 8 C.F.R. § 245.2(a)(5)(iii) provides, in relevant part:

> *Under the Act of November 2, 1966. . . .* No appeal lies from the denial of an application by the director, but the applicant, *if not an arriving alien*, retains the right to renew his or her application in [removal] proceedings under 8 CFR part 240. Also, an applicant who is a parolee and meets the two conditions described in § 245.2(a)(1) may renew a denied application in proceedings under 8 CFR part 240 to determine admissibility. (Emphasis added.)

The import of this amendment is that Cuban Adjustment Act applicants can renew their claims before Immigration Judges once in removal proceedings, but not if they are arriving aliens. Any lingering uncertainty in the intended meaning of the "jurisdictional" language in 8 C.F.R. § 245.2(a)(1) is dispelled when read in conjunction with this preclusion, for arriving aliens, of the ability to renew their claims in removal proceedings.

In sum, the literal language of the jurisdictional provision in 8 C.F.R. part 245 prohibits arriving aliens from making Cuban Adjustment Act claims before Immigration Judges in removal proceedings (unless the alien meets the special advance parole tests). That literal language is reinforced by a related regulation aimed specifically at Cuban Adjustment Act applicants, by the regulatory history contained in the proposed rules, and by the predecessor regulations that generally deprived aliens in exclusion proceedings under prior law of the ability to apply for adjustment of status before the Immigration Judges.

## III. THE MAJORITY'S RULING

The majority offers various unconvincing reasons for its decision.

First, as I read its ruling, the majority finds jurisdiction because 8 C.F.R. § 240.11(a)(1) permits Immigration Judges to entertain Cuban Adjustment Act applications in removal proceedings and because 8 C.F.R. § 245.2(a)(1) does not specifically state that an arriving alien may not initially seek such relief before an Immigration Judge. Reliance on § 240.11(a)(1), however, is to no avail. It specifically directs us to the "jurisdictional" provision in § 245.2(a)(1), by stating that any Cuban Adjustment Act "application shall be subject to the requirements of . . . 8 CFR part[] 245 . . . ."

Moreover, although I read § 245.2(a)(1) to preclude jurisdiction over claims filed by arriving aliens, the majority at least acknowledges that there is no grant of arriving alien jurisdiction in this "jurisdictional" section. That alone should be enough for the majority to arrive at a different outcome. The absence of a specific grant of authority to entertain adjustment applications in exclusion proceedings was the principal basis of our ruling in *Matter of Manneh*, *supra*, at 273-74. We stated that "[i]nasmuch as the immigration judges previously had no authority over adjustment of status applications, and given that the authority

has been specifically granted in Part 242 [deportation] proceedings but not in Part 236 [exclusion] proceedings, it cannot be found that the authority extends to immigration judges in the conduct of part 236 [exclusion] proceedings." *Id.* at 274.

Second, the majority wrongly claims that finding a lack of jurisdiction "would require us to accept the notion that jurisdiction has been withdrawn by implication" from Immigration Judges. *Matter of Artigas*, 23 I&N Dec. 99, 115 (BIA 2001). But Immigration Judges never had adjustment jurisdiction over applicants for admission who were stopped at the border, except for the special advance parole cases. Arriving aliens by definition include "applicant[s] for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.1(q). The current regulations simply do not withdraw Cuban Adjustment Act jurisdiction over arriving aliens from Immigration Judges; rather, they only withdraw that jurisdiction from district directors if the aliens have been placed in removal proceedings.

Third, the majority points to 8 C.F.R. § 245.1(c)(8), which makes arriving aliens in removal proceedings ineligible to apply for adjustment under section 245 of the Act, to the absence of a comparable declaration of ineligibility for Cuban Adjustment Act applicants, and to the statutory construction principle that the mention of one thing implies the exclusion of another. The majority's reliance on this point is not impermissible. But it is far too weak a leg to support its argument when everything else so decisively points the other way.

Furthermore, as explained earlier, the arriving alien bar to normal adjustment in 8 C.F.R. § 245.1(c)(8) is *not* a jurisdictional provision. It is a substantive eligibility provision. Thus, the majority's jurisdictional analysis would seem to apply to both Cuban Adjustment Act applications and to normal section 245 applications, because the jurisdictional language of 8 C.F.R. § 245.2(a)(1) is identical for both groups. This would lead to the unnecessarily contorted conclusion that Immigration Judges have jurisdiction in removal proceedings over both types of applications, but that relief would always be denied on the merits to normal section 245 arriving aliens, because they are substantively ineligible.

Fourth, and finally, the majority asserts that the Cuban Adjustment Act would become "meaningless" for arriving aliens if jurisdiction was found to be lacking, and it invokes the "appropriate and necessary" power given to the Immigration Judges and the Board in 8 C.F.R. §§ 3.1(d) and 240.1(a)(2). *Matter of Artigas*, *supra*, at 105-06. The latter invocation, however, is specifically contrary to our holding in *Matter of Manneh*, *supra*, in which we addressed and rejected the argument that the "appropriate and necessary" clause in the regulations provided a basis for finding jurisdiction over adjustment applications filed by aliens in exclusion proceedings. Indeed, we pointed out in that case that the Attorney General's ruling in *Matter of DeG-*, 8 I&N Dec. 325 (BIA, A.G. 1959),

foreclosed reliance on the "appropriate and necessary" clause as a basis for the assertion of jurisdiction. *Matter of Manneh*, *supra*, at 273.

In addition, our recognition that Immigration Judges and this Board lack jurisdiction over Cuban Adjustment Act applications from arriving aliens does not render the statute meaningless. It does mean that arriving aliens in removal proceedings have no forum in which to advance their claims. But this is precisely the point that the Attorney General announced when proposing regulations to implement the IIRIRA. She added that "[i]f the Service decides as a matter of prosecutorial discretion, not to initiate removal proceedings but to parole the arriving alien, the alien will be able to apply for adjustment of status before the district director." 62 Fed. Reg. at 452.

The Attorney General is fully capable of instructing the Service on how to exercise its prosecutorial discretion with respect to arriving aliens who may qualify under the Cuban Adjustment Act. The Attorney General is further fully capable of amending the regulations pertaining to arriving Cubans if application of the literal language of the jurisdictional provisions conflicts with the policy the Attorney General desires to see implemented. Importantly, our role is not to "second guess" the Attorney General's policy pronouncements out of concern that they have been carried beyond their original intent, particularly when that second guessing conflicts with a specific regulatory directive issued by the Attorney General.

## IV.  CONCLUSION

The literal language of 8 C.F.R. § 245.2(a)(1), governing jurisdiction over adjustment of status applications, does not empower Immigration Judges to rule on Cuban Adjustment Act applications filed by arriving aliens in removal proceedings. The overall regulatory structure, the regulatory history in the proposed rulemaking, and the comparable approach taken under prior law confirm what the literal language provides. The Immigration Judge lacked jurisdiction to grant relief, and we should sustain the appeal of the Service.